## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**GABRIELLE A. ADAMS,**

      **Plaintiff,**

**vs.**                                    **Case No. 1:16cv299-WTH/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate

judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C.

§ 405(g) for review of the final determination of the Acting Commissioner

(Commissioner) of the Social Security Administration (SSA) denying

Plaintiff's application for Supplemental Security Income (SSI) filed pursuant

to Title XVI of the Social Security Act.  After consideration of the entire

record, it is recommended that the decision of the Commissioner be

affirmed.

## I. Procedural History

On September 18, 2012, Plaintiff, Gabrielle A. Adams, filed an application for SSI, alleging disability beginning September 11, 2012, based on diabetes, high blood pressure (HBP), amputated right pinky toe, and bad circulation of right big toe/potential amputation.  Tr. 13, 145-53, 172, 176.  (Citations to the transcript/administrative record, ECF No. 9, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.)  The claim was initially denied on December 20, 2012, and upon reconsideration on March 18, 2013.  Tr. 13, 51-89.  On May 14, 2013, Plaintiff requested a hearing.  Tr. 13, 90-92.

On January 5, 2015, Administrative Law Judge (ALJ) Gregory J. Froehlich presided over a video hearing from Jacksonville, Florida.  Tr. 13, 27-50.  Plaintiff appeared in Gainesville, Florida, and was represented by Jonathan I. Rotstein, an attorney, although the transcript of the hearing refers to Mr. Brown as Plaintiff's representative and the ALJ refers to Mr. Rotstein in his decision.  Tr. 13, 28-29, 102-04, 142-44.  Melissa T. Brooks, an impartial vocational expert, testified.  Tr. 13, 27-28, 45-47, 132-33 (Resume).

Toward the end of the hearing, Plaintiff's representative requested that Plaintiff be referred for an additional consultative examination "to update the record and further develop and indicate the claimant's current level of functioning" because a prior consultative examination "was done over a year ago." Tr. 47. The ALJ denied the request noting, in part, that the medical records were available through October 2014 and that there was no need to have another consultative examination "with medical evidence bringing us that close to the -- through the date of the hearing." Tr. 48. Counsel also requested additional records noting that Plaintiff "was just in the hospital New Year's Eve." *Id.* The ALJ denied this request. Tr. 48-49.

On February 13, 2015, the ALJ entered a decision denying Plaintiff's application for benefits, concluding that Plaintiff was not disabled since September 18, 2012, the date the application was filed. Tr. 13-22.

Plaintiff's prior representative requested the Appeals Council to review the ALJ's decision and counsel submitted a brief and claimed, in part, that "[t]he ALJ denied the Claimant/Wage Earner her right to a full and fair hearing." Tr. 2, 8-9, 237-46 (Exhibit 18E). On July 9, 2016, the

Appeals Council denied Plaintiff's request for review making the ALJ's

decision the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

The Appeals Council expressly considered Plaintiff's "full and fair hearing"

argument, Tr. 1-7.    Thereafter, Plaintiff's prior representative withdrew.

On September 7, 2016, Plaintiff's current representative filed a

Complaint in this Court seeking judicial review.  ECF No. 1.  The parties

filed memoranda of law, ECF Nos. 24 and 25, which have been

considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since
   September 18, 2012, the application date (20 CFR 416.971 *et
   seq.*)."  Tr. 15.

2. "The claimant has the following severe impairments: diabetes
   mellitus (DM), status post right little toe amputation, history of
   myocardial infarction, peripheral vascular disease (PVD), and
   obesity.  (20 CFR 416.920(c))."  *Id.*  The ALJ determined that
   Plaintiff's "major depressive disorder" was nonsevere.  *Id.*  The
   ALJ further determined that Plaintiff had *mild* limitation in activities
   of daily living, social functioning, and concentration, persistence,
   or pace and that she experienced *no* episodes of decompensation
   which have been of extended duration.  Tr. 15-16.  The ALJ relied,
   in part, on a consultative examination performed by William E.
   Beaty, Ph.D., on March 16, 2013.  Tr. 593-95 (Exhibit 7F).  Dr.
   Beaty noted, in part, that "[t]here were no obvious appearances of

being handicapped.  There were no involuntary movements.  She walked with a normal gait."  Tr. 593.

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  Tr. 16.  The ALJ noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments."  *Id.*  Relevant to the matter before the Court, the ALJ stated:

> While there is no listing for obesity, SSR 02-1p instructs that obesity is a risk factor that can complicate an individual's existing impairments and increase an individual's likelihood of developing additional impairments, and directs that obesity be considered as part of the sequential evaluation process.  The undersigned has considered the claimant's obesity (at the hearing she testified that her height is 5'6" and her weight is approximately 239 pounds, giving her a body mass index (BMI) of 38.6) and has factored this into her residual functional capacity assessment below.

> *Id.*[1]

---

[1]  Social Security Ruling 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002) stands for the proposition that because a claimant's weight fell within the applicable definition of obesity, obesity should be considered, among other impairments, because it can cause further degradation of a claimant's physical capacity, especially in the presence of certain impairments.  *Id.*  According to SSR 02-01p, "[t]he Clinical Guidelines recognize three levels of obesity.  Level I includes BMIs of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.  These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss."  2002 SSR LEXIS 1, at *4-5.  In this case, Plaintiff's BMI would place her in the Level II category.  *Id.*  "Because there is no listing for obesity, [the

4. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 C.F.R. § 416.967(b) with limitations.  The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand/walk for 2 hours in an 8-hour workday and can sit for 6 hours in an 8-hour workday.  The claimant can never balance or climb ladders, ropes, or scaffolds.  The claimant can perform all other postural activities no more than occasionally.  The claimant must not be exposed to vibration and must not have concentrated exposure to moving mechanical parts or work at unprotected heights."  Tr. 16-17; *see infra* at n.2.

5. "The claimant has no past relevant work (20 CFR 416.965)." Tr. 20.  "The claimant was . . . 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963)."  *Id.*  "The claimant has a limited education and is able to communicate in English (20 CFR 416.964)."  Tr. 21.

6. "Considering the claimant's age, education, work experience and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a))."  Tr. 21.  The ALJ determined that Plaintiff's ability to perform all or substantially all the requirements of a full range of light work has been impeded by additional limitations. As a result, the ALJ asked the vocational expert whether these limitations erode the unskilled light occupational base and whether there were jobs that Plaintiff could perform.  *Id.*  The vocational expert testified that Plaintiff, in light of these factors, could perform the representative occupations of cashier II, ticket seller, and

---

Social Security Administration] will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of the listing."  2002 SSR LEXIS 1, at *12-13.  The ALJ found no such other impairment that met or equaled a listing and none is claimed by Plaintiff.  ECF No. 24.

information clerk, all with a light exertion level, unskilled, with an SVP of 2.[2]  Tr. 21, 45-46.

7.  "The claimant has not been under a disability, as defined in the Social Security Act, since September 18, 2012, the date the application was filed."  Tr. 22.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v.

---

[2]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[3]

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations

omitted).

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

Case No. 1:16cv299-WTH/CAS

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 416.920(a)(4)(i)-(v):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

---

[4]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v).  If the

Commissioner carries this burden, the claimant must prove that he or she

cannot perform the work suggested by the Commissioner.  Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987).

The burden is on the claimant to prove she is disabled.  Bell v.

Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986) (citing 20 C.F.R. §§

404.1525, 404.1526); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir.

1987).  A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909

(duration requirement).  Both the "impairment" and the "inability" must be

expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212

(2002).

Acceptable medical sources provide evidence to establish whether a

claimant has a medically determinable impairment.  These medical sources

include licensed physicians (medical or osteopathic doctors), licensed or

certified psychologists, and others.  20 C.F.R.

§ 416.913(a).  In addition to evidence from the acceptable medical sources,
evidence from other sources may be considered to show the *severity* of the
claimant's impairment and how it affects ability to work.  20 C.F.R.
§ 416.913(d)(1).

As the finder of fact, the ALJ is charged with the duty to evaluate all
of the medical opinions of the record, resolving conflicts that might appear.
20 C.F.R. § 416.927.  When considering medical opinions, the following
factors apply for determining the weight to give to any medical opinion: (1)
the frequency of examination and the length, nature, extent of the treatment
relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a
medical source presents relevant evidence to support an opinion,
particularly medical signs and laboratory findings, the more weight" that
opinion is given; (3) the opinion's consistency with the record as a whole;
(4) whether the opinion is from a specialist and, if it is, it will be accorded
greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. §
416.927(b) & (c).

The opinion of the claimant's treating physician must be accorded
considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).  "'The treating physician doctrine is

based on the assumption that a medical professional *who has dealt with a*

*claimant and his maladies over a long period of time* will have a deeper

insight into the medical condition of the claimant than will a person who has

examined a claimant but once, or who has only seen the claimant's medical

records.'  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis

added)."  *Id*.

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).  Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583 (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further,

where a treating physician has merely made conclusory statements, the

ALJ may afford them such weight to the extent they are supported by

clinical or laboratory findings and are consistent with other evidence as to a

claimant's impairments.  <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th

Cir. 1986).

## IV.  Legal Analysis

> **Substantial evidence supports the ALJ's consideration of Plaintiff's severe impairment of obesity and RFC determination.**

Plaintiff argues that the ALJ only briefly discussed Plaintiff's obesity

and, as a result, "this discussion was facially insufficient and led to the

unsupportable residual functional capacity [sic] determination that plaintiff

[sic] Adams could do light work."  ECF No. 24 at 30.  Plaintiff further

argues:

> Plaintiff Adams' obesity and Buerger's disease impose complications or limitations "per se."  However, even if Plaintiff Adams' obesity in combination with her Buerger's disease did not impose any complications or limitations "per se," ALJ Froehlich was still required to consider whether her obesity, in combination with herright [sic] foot issues, significantly limited her ability to perform work.

*Id.*

At step two, the ALJ found Plaintiff's "status post right little toe amputation" and her obesity to be a severe impairments and addressed the issues at step three.  Tr. 15-16; *see supra* at 4, ¶ 2.  The ALJ expressly referred to SSR 02-01p and noted that he had factored her obesity, including her height, weight, and BMI, in formulating Plaintiff's RFC.  Tr. 16.

As noted by the ALJ, Lance I. Chodosh, M.D., performed a consultative examination on February 28, 2013, and noted that Plaintiff could perform activities of daily living without assistance, though her standing balance was fair to poor, and she walked with a limp, but did not need an assistive device.  Tr. 18, 585-88.  Dr. Chodosh's impressions/comments included that Plaintiff's obesity was moderate and that, due to her obesity, foot, and other conditions, and based only on objective evidence, Plaintiff could stand and walk only occasionally, could not squat or kneel, and could not lift or carry more than 15 to 20 pounds, but could walk and stand without an assistive device and sit, bend over at the waist, handle objects, and see, hear, and speak normally.  Tr. 19, 586-88.

In fashioning the Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints as well as the medical evidence related to Plaintiff's right foot problems and obesity, and he factored those into the RFC. Tr. 20.  The ALJ referred to Plaintiff's testimony that she had two toes amputated, balance issues, could not wear certain shoes, could stand for five minutes, could walk for two minutes before needing to stop, had pains in her hips and thighs, had some medication side effects such as loose bowels, took breaks during household chores when her toes hurt, rode an electric cart when grocery shopping, and napped during the day.  Tr. 17-18, 31, 33, 41.

The ALJ also noted Plaintiff's testimony that she continued to smoke cigarettes, that her foot problems did not cause her to fall or trip, that her pain medications controlled her pain, and that she did not use a cane or other assisted device for walking.  Tr. 17-18, 31, 33, 41.

The ALJ found the limiting effects of Plaintiff's alleged symptoms were not entirely credible.  Tr. 18.  The ALJ based this determination on his

evaluation of the medical evidence, Plaintiff's daily activities, and Plaintiff's minimal work history.[5]  Tr. 16-20.

In considering the medical evidence related to Plaintiff's right foot issues, the ALJ noted the amputation of Plaintiff's right 5th toe in September 2012 and of her right 4th toe in May 2013.  Tr. 18-19, 310, 936. Although there was some pre-surgery uncertainty about the cause of Plaintiff's right 5th toe pain (negative x-ray, negative CT scan, normal vascular studies, and arterial Doppler wave form analysis showing mild arterial insufficiency), her surgeon, Jere A. Scola, D.P.M., noted a post-operative diagnosis of gangrene with possible osteomyelitis in September 2012.  Tr. 18-19, 310-11, 329, 338, 343.  Dr. Scola also provided a post-operative diagnosis of gangrene when he removed the right 4th toe in May 2013.  Tr. 926.

---

[5]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  The ALJ considered that Plaintiff remained capable of performing activities of daily living such as household chores and self-care activities that were consistent with the ability to perform work and further stated that Plaintiff's minimal earnings prior to her alleged onset date was also factor for evaluating whether her then-current unemployment was due solely to her medical impairments.  Tr. 20.

The ALJ discussed the medical opinions showing Plaintiff's foot problems related to diabetes and conditions affecting peripheral blood flow, such as peripheral neuropathy, an acute flare up of thrombotic throbocytic purpura (TTP), and Buerger's disease.  Tr. 18-19.  A mere diagnosis does not necessarily reflect adversely regarding a claimant's ability to work.  *See* Wind v. Barnhart, 133 F. App'x at 690; *see also* Moore, 405 F.3d at 1213 n.6.  Plaintiff has not demonstrated limitations greater than those identified by the ALJ.

Further, the ALJ noted that Plaintiff's right foot pain in November 2012 was an episodic event, apparently a result from an acute flare up of TPP.  Tr. 18, 370.  The ALJ noted that medication was effective in controlling Plaintiff's pain when she went to Shands Hospital in December 2012 and was diagnosed with Buerger's disease.  Tr. 18, 504.

The ALJ also discussed the opinion of Robert Whittier, M.D., a state agency physician, who reviewed Plaintiff's medical records in March 2013 and opined Plaintiff could perform light work with some postural and environmental limitations.  Tr. 19, 68-70.  The ALJ considered May 2013 records from Shands Hospital that revealed, after Plaintiff's right 4th toe

was amputated, that Plaintiff tolerated the procedure well, was ambulating without assistance the next morning, and her pain was much improved. Tr. 19, 900.

Plaintiff also had two visits in October 2014 to Shands, where a CT scan of the right foot showed no acute abnormality and an x-ray showed only soft tissue swelling.  Tr. 19, 955.  Doppler imaging of the right foot showed mild digital ischemia in the right foot, but no evidence of arterial occlusive disease of the right lower extremity.  Tr. 19, 1102.  The ALJ also discussed Dr. Scola's continuing foot care in October 2014, where Dr. Scola debrided Plaintiff's toenails, which yielded "good relief . . . as evidenced by pain-free ambulation without incident."  Tr. 19, 1026.

It is further noted that Plaintiff continued smoking, despite numerous instructions from the doctors to quit and warnings that such behavior suggested her symptoms from Buerger's disease and other peripheral vascular disease, in general, were not as severe as she alleged.  The record contains numerous warnings by doctors to quit smoking, especially given the nature of her condition, and reflect Plaintiff's continued smoking notwithstanding those warnings.  *See, e.g.*, Tr. 289, 505, 514, 518, 585,

671, 900, 955, 1079.  Plaintiff continued smoking for years with her vascular conditions, notwithstanding repeated instructions from doctors to quit and warning that smoking exacerbated her conditions, suggesting her condition was not as severe as she alleged.  *See* Holley v. Chater, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996) ("[T]he continued use of cigarettes by plaintiff suggests that his pulmonary condition is not as severe as he alleges and further supports the ALJ's decision to accord [plaintiff's] subjective complaints diminished weight.").

The ALJ further observed that no treating or evaluating medical professional had suggested that Plaintiff was incapable of performing work consistent with the RFC.  Tr. 20.  The ALJ gave significant weight to the opinions of Drs. Chodosh and Whittier, who opined that Plaintiff could do work consistent with the RFC.  The ALJ found both opinions consistent with the medical and other evidence as a whole.  *Id.*

Cases have been remanded for further consideration when an ALJ failed to explain how a claimant's obesity, in conjunction with other medical conditions, affected the ability to perform work-related activities.  *See, e.g.*, Walden v. Astrue, No. CV 308-020, 2009 U.S. Dist. LEXIS 75837 (S.D. Ga.

July 31, 2009), *adopted by and remanded by,* 2009 U.S. Dist. LEXIS 75860

(S.D. Ga. Aug. 26, 2009).  Here, however, the ALJ explained the

relationship of Plaintiff's obesity and other medical conditions to Plaintiff's

ability to perform work in light of the stated RFC.  *See* Wind, 133 F. App'x

at 690-91.

Plaintiff requests this Court to re-weigh the evidence and substitute

its discretion for that of the ALJ.  Bloodsworth, 703 F.2d at 1239.  As stated

above, the role of a reviewing court under 42 U.S.C. § 405(g) is limited to

determining whether there is substantial evidence in the record as a whole

to support the decision.  As long as the ALJ's decision is supported by

substantial evidence and based upon correct application of the law, as it is

in this case, it is entitled to deference and should be upheld.  Substantial

evidence supports the ALJ's consideration of Plaintiff's obesity when he

determined her RFC.  *See generally* Solomon v. Comm'r of Soc. Sec., 532

F. App'x 837, 840-41 (11th Cir. 2013) (unpublished).  No error has been

shown.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record and the ALJ correctly applied the

law.  Accordingly, it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's application for Social Security benefits be

**AFFIRMED.**

    **IN CHAMBERS** at Tallahassee, Florida, on June 27, 2017.

                    **s/ Charles A. Stampelos**
                    **CHARLES A. STAMPELOS**
                    **UNITED STATES MAGISTRATE JUDGE**

            **NOTICE TO THE PARTIES**

    **Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**